IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Thomas Sundin                          :

    Plaintiff                      : Case No. 3:14-CV-1274

    v.                             :

Carolyn W. Colvin,                     : (Judge Richard P. Conaboy)
Acting Commissioner of
Social Security                        :

    Defendant.                     :

FILED
SCRANTON

APR 1 6 2015

PER _____
DEPUTY CLERK

## Memorandum

We consider here the appeal of Plaintiff Thomas Sundin
("Plaintiff" or "Sundin") from a decision of the Social Security
Administration "SSA" denying his applications for Disability
Insurance Benefits ("DIB") and Supplementary Security Income
("SSI").  The issues have been briefed by parties (Doc. 17 and 18)
and the case is ripe for disposition.

**I.   Background.**

    **A.   Procedural Background.**

On December 10, 2010 and December 13, 2010, respectively,
Plaintiff filed applications with the SSA for DIB and SSI benefits.
Plaintiff's claims were denied at the administrative level and were
ultimately presented to the Administrative Law Judge, Irving A.
Pianin (the "ALJ").  The ALJ conducted a video-conferenced hearing
in the matter on April 4, 2013 and subsequently issued a decision
denying benefits on April 15, 2013.  The ALJ's decision was upheld

1

by the Appeals Council and, thus, became a final decision by the SSA on June 5, 2014.  On July 2, 2014 Plaintiff appealed the SSA's final decision to this Court.  Plaintiff's appeal seeks an order from this Court directing the Acting Commissioner to pay DIB and SSI benefits to him effective December 31, 2010 or, in the alternative, to remand this case to the Acting Commissioner for a new hearing on the question whether his medical conditions render him disabled.

**B.   Factual Background.**

Plaintiff is a resident of Athens, Pennsylvania.  (R.1).  He was born on February 7, 1968 and alleges a disability onset date of December 31, 2010.  (R.40-41).  At the time of the hearing before the ALJ Plaintiff was 44 years of age.  (Id.).  For purposes of his SSI claim, however, Plaintiff asserts an onset date of November 25, 2005.  (R.40).

Plaintiff dropped out of school in the ninth grade but later earned his GED.  (R.44).  He last worked at some indeterminate date in 2004.  (R.45).  Plaintiff left the workforce in 2004 to take care of his ailing mother.  (Id.).  He himself got sick in 2005 and he has not returned to the workplace on any long term basis since then.  (Id.).  He did make an abortive attempt to return to work in 2011 but was unable to sustain the effort.  (R.45).  Plaintiff testified that his last full time employment was as a cook/custodian in the public schools of New York City.  (R.46).  He

2

held this cook/custodian position from 1994 until 2004.   (R.55).

## A.   Physical Impairment Evidence.

The medical evidence of record indicates that Plaintiff has treated extensively for a variety of physical ailments.[1]   On November 15, 2010, Plaintiff presented to his physician, Dr. Jose Nazar, with a primary complaint of left ankle pain (R.308).   This was a follow-up visit to his initial complaint of August 23, 2010. (Id.).   Dr. Nazar found Plaintiff "had continued pain with daily activities" and "increase in swelling and is not able to walk without having severe pain".   (Id.).   Dr. Nazar stated that Plaintiff "is fully incapacitated to perform any kind of work, especially activities that require longtime sitting or standing". (R.309).   Dr. Nazar also stated that "over time, this patient will be a candidate for fusion of the ankle."   (Id.).   Dr. Nazur's findings were at least partially based upon x-rays taken by Dr. John Chotowski that indicate "a degenerative osteophyte arising from the margin of the articular surface of the talus as seen on the oblique view."   (R.307).

On March 31, 2011, Plaintiff was seen by Dr. Geeta Krishnan at the request of the Bureau of Disability Determination.   On the basis of her examination, Dr. Krishnan found that: (1) plaintiff could not lift or carry at all due to persistent dizziness; (2)

---

[1] Many of Plaintiff's medical ailments stem from a seizure he suffered in 2005 which left him in a coma for 21 days.

plaintiff could stand or walk no more than one hour in an eight hour day and even then he would need a cane or leg brace; (3) plaintiff could sit without limitation; (4) plaintiff could not use controls to push or pull due to shortness of breath and dizziness; (5) plaintiff should never be required to bend, kneel, stoop, crouch, or balance; (6) plaintiff has severe limitations due to carpal tunnel syndrome bilaterally; and (7) plaintiff has bilateral hearing loss but functions well with his hearing aid.  (R.335-339).

On July 20, 2012, Dr. Constance M. Sweet completed a Medical Source Statement on an SSA generated form.  Dr. Sweet found that: (1) plaintiff could frequently lift up to ten pounds, occasionally lift up to twenty pounds, but never lift more than twenty pounds; (2) plaintiff's carrying capacity was identical to his lifting capacity; (3) plaintiff could sit for two hours, stand for one hour, and walk for up to thirty minutes in an eight hour workday; (4) plaintiff's use of a cane was medically necessary; (5) plaintiff could not use his hands to reach, feel, push or pull; (6) plaintiff could occasionally climb stairs and balance but could never climb ladders, stoop, kneel, crouch, or crawl; and (7) plaintiff lacks the ability to hear and understand simple instructions or communicate by telephone.  (R.571-574).[2]

On July 8, 2011, the Bureau of Disability Determination sent

---

[2] Dr. Sweet's findings echo those of Nurse Practitioner Suzanne Rogers, Plaintiff's primary health care provider, in a Medical Source Statement prepared for the SSA on February 11, 2012. (R.562-69).

4

Plaintiff for a consultative examination by Dr. Deryck Brown at the Guthrie Clinic Facility in Dushore, Pennsylvania.  Dr. Brown indicated that Plaintiff's medical history "includes a fractured right lower leg.  He broke the tibia and fibia, it was a compound fracture.  He was operated on.  It has healed.  He was also later found to have a non-union of previously unrecognized left ankle fracture, which could not be operated on.  As a result, he is chronically handicapped by it now.  He also has severe hypertension cause of which is still unknown and poorly controlled.  He also has cardiomyopathy and cardiomegaly from it."  Dr. Brown also noted Plaintiff's twenty-one day coma with resultant tracheotomy and hearing loss.  He indicated that Plaintiff had difficulty understanding instructions and hypothesized that Plaintiff had decreased intellectual functioning due to the come.  Dr. Brown also found that "this gentleman has severe dizziness, probably relates to cardiomyopathy, severe hypertension uncontrolled despite medicines.  He also has numbness and tingling in both hands which was thought to be carpel tunnel syndrome.  I suspect that he instead has increasing cervical radiculopathy in his spine due to the fact that he does smoke or probably the quality of the bone in his vertebra is affected by the nicotine and cigarettes."  (R.340-43).

On October 19, 2011, Dr. Joel C. Klena diagnosed Plaintiff as suffering from bilateral carpal tunnel syndrome.  (R.370).  Dr.

5

Klena's clinical notes indicate that Plaintiff "has EMG documented carpal tunnel syndrome, left worse than right."  (R.373). Plaintiff underwent a left carpal tunnel release at Geisinger Medical Center in December of 2011, but as recently as March 27, 2013 was seen for continued complaints consistent with bilateral carpal tunnel syndrome.  (R.730-32).

## B.    Mental Impairment Evidence.

On December 13, 2011, Plaintiff presented to Dr. Michael Palmer for a clinical psychology disability evaluation at the request of the Bureau of Disability Determination.  Dr. Palmer administered the Wechsler Adult Intelligence Scale from which he determined that Plaintiff had a verbal IQ of 89, a performance IQ of 75, and a full scale IQ of 80.  These scores indicate verbal and full scale IQ's in the low average range of intelligence and a performance IQ in the borderline range according to Dr. Palmer. Dr. Palmer also stated: "The fourteen point verbal/performance discrepancy approaches clinical significance.  A verbal/performance discrepancy is sometimes seen in individuals with brain damage." With regard to Plaintiff's retention and recall abilities, Dr. Palmer stated: "He could...recall only three digits backwards a relatively poor performance.  Lowered digits backwards and digits forward abilities are also a possible indicator of brain damage." (R.396-97).

Dr. Palmer's diagnoses included: "(1) Axis I: alcohol

6

dependency, reportedly in remission.  Marijuana dependence, reportedly in remission.  Cocaine dependence, reportedly in remission.  Benzodiazepine dependence, active.  Opiod dependence, active.  Learning disorder, not otherwise specified, versus cognitive disorder, not otherwise specified.  Pain disorder with psychological factors and a general medical condition.  Anxiety disorder, not otherwise specified; (2) Axis II: Mixed personality disorder with anti-social and histrionic traits." Dr. Palmer's prognosis for Mr. Sundin was "guarded".  He stated that he was not a good therapy risk.  (R.398-99).

Dr. Palmer also concluded that: (1) plaintiff would be marginally competent to manage benefits in his own interest; (2) plaintiff's ability to understand, remember, and carry out short simple instructions was slightly impaired; (3) plaintiff's ability to understand, remember, and carry out detailed instructions was markedly impaired; (4) plaintiff's ability to make judgments on simple work-related decisions was moderately impaired; (5) plaintiff's ability to interact with the public and to respond appropriately to work pressures in a usual work setting was markedly impaired; (6) plaintiff's ability to interact appropriately with supervisors and co-workers was moderately impaired; and (7) plaintiff's ability to respond appropriately to changes in a routine work setting was moderately impaired.  (R.401-02).

7

On May 5, 2012, Plaintiff was evaluated by Teresa Fairchild-Pitcher, a psychiatric nurse practitioner who works under the direction of George W. Sowerby, M.D., a psychiatrist who ratified Ms. Fairchild-Pitcher's diagnostic impressions. Those diagnostic impressions included dysthymic disorder, anxiety disorder not otherwise specified, depressive disorder not otherwise specified, and probable personality pathology with ant-social traits. (R.618-19). Dr. Sowerby's evaluation did not include any assessment of how Plaintiff's psychiatric impairments affect his ability to do work.

## IV.   ALJ Hearing Testimony.

Plaintiff's hearing testimony may be summarized as follows:

Plaintiff testified that he completed the ninth grade and dropped out of high school but later earned his GED. (R.44). He does not drive far because of dizzy spells. (R.44-45). He last worked in 2004 when he left employment to care for his mother who had become ill with emphysema. (R.45). He himself got sick in 2005, when he spent 21 days in a coma, and never went back to work. (Id.).

Plaintiff described his last employment as that of a combination cook and custodian in the New York City Schools. (R.46). He does not believe that he would be able to work now due to persistent pain, the fact that he is heavily medicated, constant diarrhea, hand dysfunction, back pain and leg pain. (Id.).

Plaintiff testified further that, with the aid of his hearing aids, he hears "better, not well, I wouldn't say well." (R.47). His left ankle is damaged but not correctable by fusion according to two orthopedic surgeons he had consulted. (R.48). He stated that he uses a foot brace and a cane for support and to provide security against dizzy spells which come "white often". (Id.).

Plaintiff also described problems with his right leg that had required three surgeries including insertion of steel rods from his right ankle to his right knee for a compound fracture of the lower leg in 1990. (R.49).

Plaintiff described his 2011 surgery for carpal tunnel syndrome in his left hand. (Id.). He testified that he had gone back to an orthopedic specialist one week before his Social Security hearing and that he was going to submit to another carpel tunnel release due to continuing problems. (Id.). Those problems include tingling of the fingers in both hands, but especially the left hand, and problems with manual dexterity. (R.59-60). Plaintiff also asserted that he must use a cane as prescribed by his physician despite the fact that is makes him "feel like an old man". He stated further that he has an enlarged heart which causes him to feel constantly fatigued. (R.61). At time he is so winded that he cannot climb the stairs to get to his bedroom. (R.52). He believes his heart was damaged when he asphyxiated in his sleep and spent 21 days in a coma in 2005. (R.55-56). Plaintiff testified

9

further regarding problems with his back that have necessitated physical therapy, the use of a heating pad, and pain medication including Percoset. (R.50-51). Plaintiff discontinued taking the Percoset after an episode during which he blacked out while driving his car. (R.51). He currently takes Naproxen, Cymbalta and aspirin to ameliorate his back pain and arthritis. (Id.). Finally, Plaintiff testified to psychological problems including mood swings, depression, anxiety, and an inability to sleep. (R.51-52). He explained that he goes to a counselor every other week and has been doing so for more than one year. He takes Gababentin and Trozodone to combat his psychological symptoms. [3]

Vocational Expert Robin Stromberg also testified before the ALJ. She stated that she had reviewed the Plaintiff's work history in the last fifteen (15) years preceding the hearing. (R.62). That employment consisted of work as a cook, a medium duty skilled employment, and work as a custodian, a medium duty low semi-skilled employment. (Id.).

The ALJ then asked Ms. Stromberg to credit the following assumptions:

> I'd like for you to assume a person of the same age,
> education, and work background as Mr. Sundin. I'd
> like you to assume that that individual could

---

[3] The National Institute of Health website states that Gababentin is an anti-seizure medication that is sometimes prescribed for anxiety disorder; while Trozodone is an anti-depressant. See www.mlm.nih.gov/medlineplus/druginfo.

perform light work provided the work would not
require more than four hours of standing or walking
in an eight hour work period.  Would not require
more than occasional postural activities.  With no
climbing or exposure to heights or hazards.  I'd
also like you to assume that the individual should
not be exposed to excessive vibration or noise.  I'd
like you to assume that the individual could have
occasional contact with co-workers, supervisors, and
the general public.  And can perform simple routine
one or two step activities.  I assume that the
profile would not support either of Mr. Sundin's
past jobs.

R. (63). The Vocational Expert responded that, crediting the
assumptions the ALJ had proposed, the Plaintiff would be incapable
of performing his past relevant work.  (Id.).

When asked whether there would be light or sedentary unskilled
work available for a person affected by Plaintiff's impairments as
outlined in the previously described hypothetical scenario, the
Vocational Expert answered that Plaintiff could perform jobs such
as "office helper", "record clerk", and "internal mail clerk".
(R.63-64).

When asked whether, if one assumed that the Plaintiff's
testimony regarding his ability to lift, carry, sit, stand, and

11

walk was credible, the Plaintiff could perform at any full-time
work of any character, the Vocational Expert answered that he could
not do so.  (R.64).

**E.   ALJ Decision.**

The ALJ's decision (Doc. 10-2) was unfavorable to the
Plaintiff.  It included the following findings of fact and
conclusion of law:

1.   The claimant meets the insured status
     requirements of the Social Security Act through
     December 31, 2010.

2.   The claimant has not engaged in substantial
     gainful activity since December 30, 2010, the
     alleged onset date.  (20 CFR 404.1571 et seq.,
     and 416.971 et seq.).

3.   The claimant has the following severe
     impairments:  bilateral hearing loss; left
     ankle disorder; right leg disorder; vertigo;
     obesity; hypertension (HTN); depressive
     disorder; anxiety disorder and personality
     disorder (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or
     combination of impairments that meets or
     medically equals the severity of one of the
     listed impairments in 20 CFR Part 404, Subpart

P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire
record, the undersigned finds that the claimant
has the residual functional capacity to perform
light work as defined in 20 CFR 404.1567(b) and
416.967(b), except the claimant can stand and
walk for only four hours in an eight hour work
day, and can only occasionally balance, stoop,
kneel, crouch, and crawl.  He cannot work
around excessive noise or vibration, or work
around unprotected heights or moving dangerous
machinery.  The claimant can only occasionally
have contact with co-workers, supervisors,
and/or the general public due to limitations in
social functioning; and can only perform
simple, routine, repetitive, one or two-step
tasks, due to limitations in concentration,
persistence or pace.

6.   The claimant is unable to perform any past
relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on February 7, 1968 and
was thirty seven years old, which is defined as
a younger individual age 18-49, on the alleged

disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability as defined in the Social Security Act, from December 30, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II.  Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[4]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 CFR §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate

---

[4] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform. (R.19).

## III.  Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel*

*non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See Cotter*, 642 F.2d at 706 ("Substantial evidence" can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits,

17

"to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*,

18

181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v. Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion.

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special

nature of proceedings for disability benefits.  *See Dobrowolsky*,
606 F.2d at 406.  Social Security proceedings are not strictly
adversarial, but rather the Social Security Administration provides
an applicant with assistance to prove his claim.  *Id.*  "These
proceedings are extremely important to the claimants, who are in
real need in most instances and who claim not charity but that
which is rightfully due as provided for in Chapter 7, Subchapter
II, of the Social Security Act."  *Hess v. Secretary of Health,
Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974).  As such,
the agency must take extra care in developing an administrative
record and in explicitly weighing all evidence.  *Dobrowolsky*, 606
F.2d at 406.  Further, the court in *Dobrowolsky* noted "the cases
demonstrate that, consistent with the legislative purpose, courts
have mandated that leniency be shown in establishing the claimant's
disability, and that the Secretary's responsibility to rebut it be
strictly construed."  *Id*.

**B.   Plaintiff's Allegations of Error.**

1.   Whether the ALJ erred by failing to give proper
consideration to the medical conclusions of two
treating physicians and a consulting/examining
physician in forming his assessment of Plaintiff's
residual functional capacity?

The ALJ's assessment of the Plaintiff's RFC (Pages 10-11 ante)
contradicts the medical assessments of two treating physicians and

one consulting/examining physician.  The ALJ's conclusion that Plaintiff could perform light work provided he be required to stand and walk no more than four hours in an eight hour period stands in stark contrast to the limitations found by treating physicians Jose Nazar and Constance M. Sweet as well as that of the consulting/examining physican Dr. Geeta Krishnan.

Dr. Nazar found Plaintiff to be fully incapacitated to perform any kind of work, especially activities that require "longtime sitting or longtime standing" as a result of left ankle symptomology that, in Dr. Nazar's view, would ultimately require surgical fusion.  (R.309).  Dr. Nazar saw Plaintiff on multiple occasions between August of 2010 and February of 2011 and his opinion was based upon x-rays of Plaintiff's left ankle taken by Dr. John Chotowski on August 23, 2010.  (R.307).

Dr. Sweet, Plaintiff's primary care physician, completed a Medical Source Statement in which she stated that Plaintiff could sit no more than three hours, stand no more than two hours, and walk no more than one hour in an eight hour day.  (R.571-76).  Dr. Sweet also found that Plaintiff could not use either hand to push/pull or handle objects and that Plaintiff could not use either foot to operate foot controls. [5]  The RFC the ALJ assigned to Plaintiff Sundin does not provide for any limitation in his ability

---

[5] The Commissioner's definition of "light work" encompasses jobs in which the worker sits "most of the time with some pushing or pulling of arm or leg controls." 20 CFR § 404.1567(b).

to use hand or foot controls nor does it limit walking, standing and sitting to the extent Dr. Sweet does.

Dr. Krishnan was asked to evaluate Plaintiff's ability to perform work-related activities by the Bureau of Disability Determination. Dr. Krishnan's Medical Source Statement regarding Plaintiff is even more limiting than that authored by Dr. Sweet. Dr. Krishnan found that Plaintiff could walk no more than one hour in an eight hour day, that he could not lift or carry even ten pounds occasionally due to persistent dizziness, and that Plaintiff could not bend, kneel, stoop or crouch at all due to severe restrictions with dizziness, shortness of breath, and the inherent restrictions imposed by his leg brace. None of these limitations is accommodated in the RFC determined by the ALJ.

In concluding that the Plaintiff's limitations as determined by doctors Nazar, Sweet, and Krishnan were not, individually or jointly, entitled to significant weight, the ALJ relied upon the Physical Residual Functional Capacity Assessment prepared by Dr. Kurt Maas on December 22, 2011. (R.538-544). Dr. Maas, who never laid eyes upon the Plaintiff, examined the records of Dr. Nazar and Dr. Krishnan. [6] Dr. Maas stated that "consideration was given" to Dr. Nazar's opinion that Plaintiff was disabled. With respect to Dr. Krishnan's findings, Dr. Maas stated: "Some of the opinions

---

[6] Dr. Maas did not review Dr. Sweet's records because he made his assessment before Dr. Sweet completed hers.

cited in the report are viewed as an overestimate of the severity of the claimant's functional restrictions....These observations are not consistent with all the medical and non-medical evidence in the claims folder....The physician's opinion contrasts sharply with other evidence in the record, which renders it less persuasive."

Thus, from his mere review of the records of these other physicians who had treated or at least seen the Plaintiff, Dr. Maas concluded that Plaintiff could stand and/or walk six hours in an eight hour day; that his ability to push and/or pull was completely unlimited in the upper and lower extremities; that he had no limitations with respect to climbing, balancing, stooping, kneeling, or crawling; and that he had no manipulative or environmental limitations.  How Dr. Maas was able to divine these things is beyond the comprehension of this Court.

His rejection of the conclusions of Drs. Nazar and Krishnan states that their reasoning was inconsistent with other medical evidence of record without identifying that evidence or explaining the inconsistency.  Their reasoning was based in some measure on personal observation of the claimant and discourse with him and, for that reason, is entitled to some weight.  Morales v. Apfel, 225 F.3d 310, 316-18 (3d. Cir. 2000).  Dr. Maas' reasoning is based upon a foundation he has not revealed.  His cryptic reference to "other medical evidence of record is too vague to permit this Court to evaluate it.  It was also too vague to serve as the ALJ's

23

foundation for a decision to subordinate the contrary opinions of Drs. Nazar, Sweet, and Krishnan.  Simply put, the ALJ's determination of the Plaintiff's RFC is based upon the slender thread of Dr. Maas' insufficiently detailed conclusions.  This alone is enough to require remand of this case to the Commisssioner.

    2.    Whether the ALJ Erred by Failing to Include all Plaintiff's Impairments and Limitations of Record in Formulating his Hypothetical Question to the Vocational Expert?

As Plaintiff's counsel notes in his brief: "An ALJ's hypothetical must include all of a claimant's impairments." Ramirez v. Barnhart, 372 F.3d 546, 552 (3d. Cir. 2004).  Our Circuit Court has stated:

> Discussing hypothetical questions to vocational experts, we have said that "[w]hile the ALJ made proffer a variety of assumptions to the expert, the vocational expert's testimony  concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments."  Podedworny, 745 F.2d at 218.  A hypothetical question posed to a vocational expert

24

> "must reflect all of a claimant's impairments."
> Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d. Cir.
> 1987)(emphasis added). Where there exists in the
> record medically undisputed evidence of specific
> impairments not included in a hypothetical question
> to a vocational expert, the expert's response is not
> considered substantial evidence. Podedworny, 745
> F.2d at 218 (citing Wallace v. Secretary of Health
> and Human Services, 722 F.2d 1150, 1155 (3d. Cir.
> 1983)).

Burns v. Barnhart, 312 F.3d 113, 123 (3d. Cir. 2002). These pronouncements regarding the degree of specificity necessary to formulate a valid hypothetical question in a Social Security Disability case has not been observed in this case.

There is unrefuted medical evidence in this record that Plaintiff suffers from (1) tingling and numbing in his hands secondary to carpal tunnel syndrome and/or cervical radiculopathy (R. at 343 and 370-73); severe breathing restrictions and shortness of breath secondary to cardiomegaly and/or obesity (R.336 and 652); and chronic pain secondary to left ankle and right leg abnormalities and lumber disk disease (R.307-312, 347-48, 350-51, and 354). While the ALJ determined that each of these conditions did not constitute a severe impairment, their existence has not been refuted. Nevertheless, nothing in the hypothetical question

he posed to the vocational expert asked that the vocational expert factor hand symptoms, shortness of breath, or chronic pain into her assessment of what work Plaintiff could continue to perform. Consequently, the vocational expert's response to the hypothetical question cannot be considered substantial evidence under Podedworny, supra, and its progeny.  This, at a minimum, requires remand to the Commissioner for the purpose of allowing a vocational expert to assess Plaintiff's employability based upon all his impairments.

3.    Whether the ALJ Exhibited Bias Against the Claimant by Prematurely Closing the Record and Failing to Assist the Claimant in Developing that Record?

Since the Court has already determined that this matter must be remanded for other reasons, the question of whether the Plaintiff's hearing was procedurally proper is moot.  However, the Court feels compelled to comment that it can perceive no valid reason why the ALJ would make an issue of Plaintiff's counsel's request that the record be held open pending receipt of additional medical records that had been requested some five weeks before the hearing. (R.41-42).  The Plaintiff had waited 29 months for his opportunity to be heard.  The ALJ should have held the record open for the additional evidence as a matter of course.  The ALJ's resistance to doing so is disturbing and runs contrary to his duty to develop a full and fair record.  Ventura v. Shalala, 55 F.3d

900, 902 (3d. Cir. 1995).

**V.    Conclusion.**

For the reasons stated above and because the Court cannot conclude from this record that substantial evidence - -that quantum of evidence that a reasonable mind might accept as adequate to support a conclusion - - supports the Commissioner's decision to deny benefits in this case, the case will be remanded for further proceedings consistent with this opinion.   An Order to that effect will be filed contemporaneously.


BY THE COURT


_____
Honorable Richard P. Conaboy
United States District Court


Dated:_____4.16-15_____

27